UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

      v.                           Case No. 8:04-CR-574-T-17MSS

PELE LA CRUZ WATKINS


GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT
OF DISMISSAL OF INDICTMENT WITHOUT PREJUDICE

COMES NOW the United States of America, by and through its representative, the undersigned Assistant United States Attorney, and submits to this Court its Memorandum of Law in Support of Dismissal of Indictment Without Prejudice.

As anticipated, the defendant has filed a motion to dismiss the indictment in the instant case due to a violation of the Speedy Trial Act. He moves that this Court do so and grant that dismissal with prejudice to the right of the United States to re-prosecute him as to the charges contained in this indictment.

I. Factual Background

On November 23, 2004, a federal grand jury returned the initial indictment against this defendant. Doc. CR-13. That indictment alleged that on October 6, 2004, the defendant violated 18 U.S.C. § 922(g) by possessing a 9mm. Jennings semi-automatic pistol and twelve rounds of 9mm. ammunition while he was then a convicted felon. The indictment further alleged that at that time, the defendant had previously been convicted in the Common Pleas Court of Philadelphia, Pennsylvania of the felony offense of Possessing a Firearm Without a License.

The charges in that indictment arose out of an undercover investigation of the defendant by special agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). ATF agents learned in early October, 2004 that the defendant was the alleged owner of a business providing lingerie modeling and escort services. According to information law enforcement had gathered at that time, the defendant had been offering a sum of money for the intentional arson of a competitor's lingerie modeling shop located in Bradenton, Florida.

Acting on that information, an undercover ATF special agent met with the defendant on October 6, 2004. During that meeting, the defendant discussed with the undercover agent his offer of money in exchange for the arson of the competitor's shop. The defendant described the store, its location, its layout, and the area around it. The undercover agent and the defendant agreed upon the $3,000 price for the arson. The defendant suggested that the arson occur on the following Monday at about 5:00 AM. When he described the Bradenton store to the undercover agent, the defendant made clear that it was open for business 24 hours a day. The agent, alarmed about the possible potential for loss of life due to the fire, told the defendant that he might have to charge more than $3,000. The defendant did not respond to that comment and did nothing to dissuade the agent from the plan. As part of his down-payment, the defendant offered the undercover agent a Jennings 9mm. pistol, a pistol which the defendant had brought to the meeting in his own car. The agent took it and indicated that he would deduct $500 from his fee for the arson in exchange for the pistol. The two agreed to meet later in the week so that the defendant could make an additional down-payment to the agent.

Following another meeting on October 16, the defendant met with the undercover agent on October 22.  At that meeting, the two discussed a diagram of the Bradenton store and the undercover agent advised the defendant that he (the agent) would do the arson later that night.  The defendant agreed with that plan and then  indicated that he was going to be leaving town later that day so as to create an alibi for himself in the event that the arson was successful.  Shortly thereafter, law enforcement officers arrested the defendant.

Following his November 23 indictment and December 9 arraignment, the defendant, then represented by the Federal Public Defender, began to file a series of pro se motions.  Doc. CR-17, 18, 22, 23, 28, 34, 35, and 36.  This Court struck those motions on January 6 and January 21, 2005.  Doc.  CR-26, 37.  However, on December 29, 2004, the defendant also made an oral motion to continue trial towards the end of January, 2005 and the Court granted it at that time.  Doc. CR-20 and 21.

Due to difficulties between them, the Federal Public Defender filed a motion to withdraw as counsel for the defendant and the United States did not oppose that motion.  Doc. CR-39.   A few days later, the grand jury returned a superseding indictment against this defendant, adding Count Two, charging a violation 18 U.S.C. § 844(i).  Doc. CR-43.  The next day, this Court granted the Public Defender's motion to withdraw and appointed new counsel to the defendant.  Doc. CR-41.

Defendant's new counsel and the defendant appear to have continued to have difficulties and this Court conducted a Ferretta hearing on February 9 as to the defendant's desire to represent himself.  Doc. CR-47.  A second superseding indictment

followed on March 1, 2005, adding Count Three, charging him with a violation of 18 U.S.C. § 373(a).  Doc. CR-51.

On April 22, 2005, this Court held a status of the case conference.  At that time, counsel for the defendant indicated that he was continuing to have difficulties dealing with the defendant in this case.  The Court was inclined to set an additional status of the case conference, but was concerned about the Speedy Trial Act and the timing of the trial herein.  In fact, the Court had inquired about that aspect of the case at its last status of the case conference on March 4.  Out of that concern for the Speedy Trial time constraints, this Court scheduled the trial of this case for April 25, 2005.

Later on the afternoon of April 22, the United States, through the undersigned Assistant United States Attorney, contacted counsel for the defendant and the Court and indicated a concern that there may have been a violation of the Speedy Trial act herein.  In that telephone conference, the United States advised the Court that although its calculation was not precise, it seemed fairly clear that such a violation has apparently taken place.  The United States indicated that it would be unable to counter any motion to dismiss on those grounds pursuant to 18 U.S.C. § 3162(a)(2).  The United States, however, reserved at that time its right to contest whether the resulting dismissal of the instant indictment should be with or without prejudice to its right to re-prosecute the defendant.

## II.  Dismissal Options

In his motion, the defendant has requested dismissal of the instant indictment due to a violation of 18 U.S.C. § 3161(c)(1).  He is likely to request that the dismissal be with prejudice to a re-prosecution of the defendant.

4

The statute makes clear that this Court must then consider whether it will grant that motion with or without prejudice.  18 U.S.C. § 3162(a)(2).  In reaching that decision, this Court <u>must</u> consider three factors; (1) the seriousness of the offense(s); (2) "the facts and circumstances of the case which led to the dismissal"; and (3) the impact of a re-prosecution of the case upon the administration of justice and the administration of the Speedy Trial Act itself.  <u>Id.</u>

It is clear that Congress did not intend for either of the two alternative dismissal orders to be the presumptive remedy for a violation of th Speedy Trial Act.  <u>United States v. Taylor</u>, 487 U.S. 326, 334 (1988); <u>United States v. Russo</u>, 741 F.2d 1264, 1266 (11th Cir. 1984).  The Court must fully consider and weigh each of the three factors set forth in the Act itself before deciding which alternative to choose.

A.  <u>Seriousness of the Offense</u>

The offenses which the second superseding indictment charge are all, by their very punishment terms alone, serious.  The charges include a violation of 18 U.S.C. § 922(g)(1), a felony which carries a ten year maximum term of imprisonment; a violation of 18 U.S.C. § 844(i), a felony which carries a minimum mandatory term of imprisonment of five year and a maximum term of either 20 years (if no injury results) or 40 years (if injury results); and a violation of 18 U.S.C. § 373(a), a felony which carries a maximum term of imprisonment of one half of the maximum term of the crime solicited. In this case, the crime solicited would be the violation of 18 U.S.C. § 844(i). Each offense contains significant elements of violence and each offense, under the Sentencing Guidelines, carries a mandatory term of imprisonment.

The actual facts of the instant case indicate even more clearly the "seriousness" of these offenses.  The defendant solicited an undercover agent to burn down the premises of a rival lingerie modeling business.  In the course of conversation about it, he suggested a time for the arson at which it was quite possible that people would be inside of the premises.  The defendant expressed no concern over that fact and was more concerned about being out of town in order to create an alibi at the time of the arson. His handing over a fully loaded 9mm. pistol to the undercover agent as part of his down-payment for the crime he was soliciting is even further evidence of the defendant's lack of concern for human life and injury.  The defendant was, at the time of these discussions soliciting this crime, a convicted felon himself, the result of a Pennsylvania firearms offense in 2003.

The defendant could not even lawfully possess a firearm at the time he met to discuss and solicit the crime of arson.  Yet he thought nothing of handing that loaded firearm over to the undercover agent, a person who was a near stranger to the defendant, yet someone who had told the defendant that he would commit this arson even if there was a chance that innocent people would be inside of the premises at the time of the fire.  All of these factors weight heavily in the analysis of the seriousness of the charged offenses in the second superseding indictment.  In cases such as this where the crimes charged are of such a serious nature, the court should dismiss (with prejudice) only in the event of a " 'correspondingly severe delay. '" United States v. Phillips, 775 F.2d 1454, 1456 (11th Cir. 1985) (quoting United States v. Russo, 741 F.2d at 1267).  In light of the exclusion of many days of time from the Speedy Trial calculation due to this defendant's numerous pro se motions and his many quarrels with

several of his attorneys to date, no such lengthy and egregious period of delay beyond the seventy day period exists in the instant case.

      B.  <u>Facts and Circumstances Leading to Dismissal</u>

    In its analysis of the facts and circumstances leading to the violation of the Speedy Trial Act, this Court must consider a number of factors. Chief among them is the intentional bad faith, or lack of such malice, on the part of the United States in causing or allowing the violation to occur. <u>See, e.g.</u>, <u>United States v. Williams</u>, 314 F.3d 552, 559 (11th Cir. 2002); <u>United States v. Russo</u>, 741 F.2d at 1267. This fact is an "important part" of this analysis. <u>United States v. Wright</u>, 6 F.3d 811, 814 (11th Cir. 1994). Also relevant is the effect that the resulting delay in trial has had, if any, upon the defendant and the prejudice to him. In addition, the conduct of the defendant in causing some of the pre-trial delay must also be considered. Any "culpable conduct" by the defendant can "weigh heavily in favor of permitting reprosecution." <u>United States v. Taylor</u>, 487 U.S. at 340. Evidence of an "isolated unwitting violation"of the Act, as opposed to "bad faith" or a "pattern of neglect" by the United States, is also relevant to reaching that same conclusion. <u>Id.</u> at 339.

    There is also no pre-set or determined amount of time of delay that automatically triggers a dismissal under this statute with prejudice. <u>United States v. Taylor</u>, 487 U.S. at 341 n.12. Indeed, even the fact that a defendant is in custody, as this defendant was, during the time of the Speedy Trial delay does not lead inexorably to the conclusion that his prejudice is so great as to mandate a dismissal with prejudice. <u>See, e.g.</u> <u>United States v. Wyers</u>, 546 F.2d 599, 602 (5th Cir. 1977) (applying <u>Barker v. Wingo</u> constitutional speedy trial standards, court finds that ten months of imprisonment of a

defendant in connection with his indictment "did not amount to serious prejudice."). For these among other reasons, the Eleventh Circuit has held that even a delay of 68 days is not so "substantial per se" to warrant the dismissal of an indictment with prejudice. United States v. Williams, 314 F.3d at 560.

In the instant case, there is no evidence to suggest that the United States obtained any significant tactical advantage from the delay that occurred. At the very least, the first superseding indictment appears to have been filed within the 70 day period of includable time under the Speedy Trial Act and the second may have also been filed during that time period as well. The evidence against the defendant has not altered significantly and there does not appear to be any reason to suspect that any witnesses who might benefit the defendant have disappeared or are now unable to testify due to the delay. The physical evidence which the United States is aware of has not changed and remains available for all parties to use as they see fit.

In this case, the assigned Assistant United States Attorney appears to have overlooked the effect of the superseding indictments upon the Speedy Trial clock. The United States is not aware of any other Speedy Trial violations by that Assistant United States Attorney in the handling of any of the other cases that he has prosecuted in the past. There is no evidence to suggest that he did so with any intent to harm the defendant or prejudice his case or with any bad faith or malice of any kind. There was no tactical advantage which the United States might have gained from this delay. Indeed, as indicated below, the delay, if it had any effect at all on either side, had a harmful effect on the United States in the ultimate trial of this indictment.

This Court should also consider the actions of the defendant as it relates to the amount of time leading to the commencement of his trial. In the course of this case, the defendant has filed numerous pro se motions even while being represented; caused a rift with one attorney from the Federal Public Defender's Office wide enough to necessitate her withdrawal from the case, requested that he represent himself, and obtained a second appointed counsel, with whom he also appears to be unable to communicate adequately. Doc. CR-44. Two of his counsel have complained on the record of their inability to deal with this defendant. Doc. CR- 39, 41, and 44. Indeed, the defendant appears to have alienated and had difficulty dealing with at least three different lawyers from the Federal Public Defender's Office, a rift significant enough to prompt the last of his attorneys to suggest that "there can be no meaningful attorney-client relationship between Mr. Watkins and anyone in the Federal Public Defender's Office." Doc. CR- 39 at 3. These facts must also be part of the Court's calculus in determining whether to grant a dismissal of this indictment with or without prejudice.

C. Impact of Re-Prosecution

This third criterion encompasses a number of elements. The presence or absence of prejudice to the defendant is one factor in this analysis. United States v. Taylor, 487 U.S. at 340-41. As indicated above, there could be little or no prejudice to the defendant from this delay other than the prejudice of his incarceration in advance of a trial on very serious and violent types of offenses.

This third criterion is not neutral as to the remedy the court should impose. It is largely a "re-statement of the other two" in that if the violation of the Speedy Trial Act is egregious, then a dismissal without prejudice will damage the administration of the Act

itself.  <u>United States v. Godoy</u>, 821 F.2d 1498, 1506 (11th Cir. 1987), <u>cert. denied</u> 484

U.S. 1044 (1988).  However, if the crimes are "quite serious", a dismissal with prejudice

would have a "severe impact on the administration of justice." <u>Id.</u>

It is a mistake to believe that this third factor mandates a dismissal with prejudice

as the only alternative a court has to sanction the United States for its conduct in the

violation of the Speedy Trial Act.  It would be erroneous to believe that a dismissal of

this indictment without prejudice would be a meaningless and "toothless sanction".

<u>United States v. Taylor</u>, 487 U.S. at 342.  Such an action would put the United States to

the test of having to re-present the matter to a grand jury and face other  increased

hurdles to its chances of success. Those hurdles include delayed time, witness memory

lapse, and any other damage which the passage of time might do to the prospects for

conviction in the case.  In light of those considerations, this third factor also tends to

militate in favor of dismissal of the instant charges without prejudice.

III.  <u>Conclusion</u>

The burden is upon the defendant to support his motion to dismiss with prejudice

for violation of the Speedy Trial Act.  18 U.S.C. § 3162(a)(2).  He must show that the

balance of the three factors which Congress set forth for determination of the type of

dismissal necessary favors the dismissal of his case with prejudice.  He has failed to do

so here.

In the instant case, the three factors which this Court must consider do not

require such a drastic remedy in order to vindicate the interests of the court, the public,

the defendant,  the United States, and, most especially, the interests of justice.  The

dismissal order which this Court should enter should be one without prejudice to the re-prosecution of the defendant for the charges herein.

WHEREFORE, the United States respectfully moves that this Court enter an order dismissing the instant case without prejudice.

Respectfully submitted,

PAUL I. PEREZ
United States Attorney


By:     */s/ Jay L. Hoffer*
        JAY L. HOFFER
        Assistant United States Attorney
        Florida Bar No. 0910708
        400 North Tampa Street, Suite 3200
        Tampa, Florida  33602
        Telephone:   (813) 274-6318
        Facsimile:    (813) 274-6178
        E-Mail:         jay.hoffer@usdoj.gov

**U.S. v. PELE WATKINS**                     **Case No.  8:04-CR-574-T-17MSS**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 25, 2005, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Brent Armstrong, Esq.
5560 Roosevelt Boulevard, Suite #3
Clearwater, Florida  33760-3469

_/s/ Jay L. Hoffer_
JAY L. HOFFER
Assistant United States Attorney
Florida Bar No. 0910708
400 North Tampa Street, Suite 3200
Tampa, Florida  33602
Telephone:   (813) 274-6318
Facsimile:    (813) 274-6178
E-Mail:          jay.hoffer@usdoj.gov